**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                   :
SUNI HAKIM, JR.,        :
                   :  Civil Action No. 08-4012 (JBS)
        Plaintiff,   :
                   :
        v.              :
                   :  **O P I N I O N**
COUNTY EXECUTIVE     :
DENIS LEVINSON, et al.,  :
                   :
        Defendants.  :
_____:

     **APPEARANCES:**
     Suni Hakim, Jr. #156337, Plaintiff <u>Pro Se</u>
     Atlantic County Justice Facility
     5060 Atlantic Avenue
     Mays Landing, New Jersey 08302

**Simandle**, District Judge:

    This matter comes before the Court upon submission of a civil complaint ("Complaint") by plaintiff Suni Hakim, Jr. ("Plaintiff"), who appears to be a pre-trial detainee currently confined at the Atlantic County Justice Facility ("Facility").

    Having thoroughly reviewed Plaintiff's allegations stated in the Complaint and the application to proceed <u>in forma pauperis</u>,[1] as required by 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), this

---

    [1] Plaintiff initially failed to file his complete application to proceed in this matter <u>in forma pauperis</u>, and the case was administratively terminated on August 20, 2008, pursuant to this Court's order. <u>See</u> Docket Entry No. 2. On September 4, 2008, Plaintiff cured the deficiencies of his <u>in forma pauperis</u> application. <u>See</u> Docket Entry No. 3.

Court will grant Plaintiff <u>in forma pauperis</u> status and will dismiss, <u>sua sponte</u>, Plaintiff's Complaint, while allowing Plaintiff an opportunity to file an amended pleading.

## I.   BACKGROUND

In his Complaint, Plaintiff names the following Defendants: (1) Freeholders of Atlantic County;[2] (2) Warden Gary Merline; (3) "Atlantic County Captain Thomas"; and (4) "County Facility Inspector John Doe."[3]  <u>See</u> Docket Entry No. 1, at 4-7.  The Complaint asserts the following facts, upon which Plaintiff's claims are based:

> [Plaintiff] consumed rotten food and had stomach virus [on] June 27[-]28, 2008. [Plaintiff] slept in a[n] overcrow[d]ed cell on the floor two feet near and under toilet level.  Since Dec[ember 20]07. [Plaintiff even] slept on floor two feet from toilet while it was clogged with feces and urine in it [on] April [20]08. [Plaintiff is] not having mandatory recreation since Dec[ember 20]07.  [There is] no trained law library person to help assist [Plaintiff] with [his] case . . . .

<u>Id.</u> at 5.

---

[2]  Plaintiff's Complaint also names, as Defendants, "Share Freeholders of Atlantic County."  <u>See</u> Compl. at 4.

[3]  The caption of Plaintiff's Complaint provides an alternative list of Defendants: (1) "County Executive Denis Levinson"; (2) Warden Gary Merline; (3) "A[tlantic] C[ounty] Director Captain Thomas"; (4) "County Facility Inspector John Doe"; and (5) "Free Shareholder and Shareholders of Atlantic County."  Docket Entry No. 1, at 1.  The Court reads these two alternative lists as suggesting that Plaintiff wished to name, as Defendants in this action, the following persons: Denis Levinson, Gary Merline, Captain Thomas, John Doe and Freeholders of Atlantic County.

## II.  <u>STANDARD FOR SUA SPONTE DISMISSAL</u>

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  <u>See</u> <u>id.</u>

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals guided as follows:

> [There are] two new concepts in <u>Twombly</u> [127 S. Ct. 1955 (2007)].  First, . . . "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' requires [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." <u>Twombly</u>, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." <u>Id.</u> at 1965 n.3.  . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to

3

relief.'"  Id. at 1966.  [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3.  Second, the Supreme Court disavowed certain language that it had used many times before -- the "no set of facts" language from Conley.  See id. at 1968. . . .

[T]he Twombly decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. . . . [Thus,] taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S. Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where . . . the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  See Airborne Beepers & Video, Inc., v. AT&T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007). . . . After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct." Id. . . . .

The more difficult question raised by Twombly is whether the Supreme Court imposed a new "plausibility" requirement at the pleading stage that materially alters the notice pleading regime. . . . The Court explained that a plaintiff must "nudge [his or her] claims across the line from conceivable to plausible" . . . . 127 S. Ct. at 1974. . . . "Plausibility" is related to the requirement of a Rule 8 "showing." [Thus, while a court cannot] dismiss[] . . . a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. [T]he pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  Id.  This "does not impose a probability requirement at the pleading stage[]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id.

Phillips, 515 F.3d at 230-34 (original brackets removed).

The Court remains mindful that even after Twombly, the

sufficiency of a pro se complaint must be construed liberally.

Erickson v. Pardus, _____ U.S. _____, 127 S. Ct. 2197, 2200
(2007).


## III.  DISCUSSION

### A.  Respondeat Superior Claims

It is well established that liability cannot be imposed under
§ 1983 on a respondeat superior theory.  See Monell v. Dep't of
Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362
(1976).  "'A[n individual government] defendant in a civil rights
action must have personal involvement in the alleged wrongdoing;
liability cannot be predicated solely on the operation of
respondeat superior.'"  Evancho v. Fisher, 423 F.3d 347, 353 (3d
Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
Cir. 1988).  "A defendant in a civil rights action must have
personal involvement in the alleged wrongs . . . through [either]
personal direction or . . . actual knowledge and acquiescence."
Rode, 845 F.2d at 1207; accord Robinson v. City of Pittsburgh, 120
F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d
1186, 1190-91 (3d Cir. 1995).  Thus, to establish liability, "a
plaintiff must show that an official who has the power to make
policy is responsible for either the affirmative proclamation of a
policy or acquiescence in a well-settled custom."  Bielevicz v.
Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1977).

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.   The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the

need."  <u>Natale</u>, 318 F.3d at 584 (footnote, quotation marks and citations omitted).

Here, Plaintiff's claims against the "county executive," warden, County Captain/Director, County Inspector and County Freeholders appear to be based solely the theory of <u>respondeat superior</u>, since Plaintiff, short of naming these persons as Defendants, makes no allegations suggesting their personal involvement in the alleged wrongs; in fact, Plaintiff makes no allegations against these persons whatsoever other that those based on vicarious liability.  <u>See</u> Docket Entry No. 1, at 5 ("They violated my rights by not being sure my rights weren't being violated.  Each Defendant named has not been on top of the people under their command").  Consequently, as drafted, Plaintiff's allegations fail to state a claim against these persons and will be dismissed.  However, since it appears plausible that Plaintiff might be able to articulate a claim against some or all of these Defendants (or name alternative defendants), the Court will allow Plaintiff an opportunity to amend his pleading to that effect.  <u>See</u> <u>O'Dell v. United States Gov't</u>, 256 Fed. App'x 444 (3d Cir. 2007) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption").

**B.   Due Process Allegations**

Since it appears that Plaintiff is held at the Facility as a pre-trial detainee, the Court examines Plaintiff's allegations with respect to his conditions of confinement under the test applicable to Fourteenth Amendment due process claims.

"[T]he Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner," Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) (citation omitted); see also Bell v. Wolfish, 441 U.S. 520, 544 (1979); City of Revere v. Massachusetts, 463 U.S. 239, 244 (1983), and the Eighth Amendment sets forth the floor for the standard applicable to the claims of pre-trial detainees.  See Bell, 441 U.S. at 544.  Thus, a failure of prison officials to provide minimally civil conditions of confinement to pre-trial detainees, or deliberate indifference to a serious medical needs of such detainees, violates their right not to be punished without due process of law.  See Reynolds, 128 F.3d at 173-74; Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 345-46, n.31 (3d Cir. 1987); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825 (1994).

Addressing a conditions-of-confinement claim, the court should analyze whether a pre-trial detainee has been deprived of liberty without due process; such analysis is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520.  See Fuentes v. Wagner, 206 F.3d 335, 341-42 (3d Cir. 2000).

8

> In evaluating the constitutionality of conditions or restrictions of [pre-trial] detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. . . . Not every disability imposed during [pre-trial] detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. . . . A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of [pre-trial] detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell v. Wolfish, 441 U.S. at 535-39 (quotation marks and citations omitted).

The Court of Appeals further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional

punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. Id. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

Consequently, the Third Circuit established a two-part test in line with Bell:

> we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes.  In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them.

Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983).

### 1.   Overcrowding Allegations

Plaintiff's allegations with respect to overcrowding, as drafted, fail to state a claim.  In Bell, the Supreme Court held that the fact of overcrowding per se did not constitute punishment, and therefore, cannot violate the pretrial detainees' due process rights.  See Bell v. Wolfish, 441 U.S. at 541-43.  The Court explained that only the conditions of confinement provided "in such a manner as to cause [detainees] to endure genuine privation and hardship over an extended period of time" raises a due process

10

concern.  Id. at 542.  Following the Supreme Court's guidance in Bell, the Court of Appeals for the Third Circuit recently clarified, in Hubbard v. Taylor, 538 F.3d 229 (3d Cir. 2008), that a pre-trial detainee's conditions of confinement should be assessed under the "totality of the circumstances within [the] institution" test.  538 F.3d at 235.  The Hubbard court explained that a limited cell space claim is indelible from an inquiry into the space of the institution's day-rooms, that allegations as to the use of floor mattresses require an assessment of proliferation of resulting diseases or splashes of human waste upon the inmates, and that all conditions of confinement allegations should be assessed jointly and through the prism of the institution's investments and/or other efforts aiming to alleviate the conditions.  See id. 235-36 (stressing "that nowhere in Bell did the Supreme Court suggest that if detainees are treated differently or worse than convicted inmates, they are ipso facto being 'punished' in violation of the Due Process Clause").

In view of the Court of Appeals' guidance in Hubbard, Plaintiff's overcrowding allegations do not state a claim, since Plaintiff asserts the fact of his sleeping on a floor mattress near a toilet, but does not allege that he has been deprived of access to a day-room area, or that the day-room area was unduly small, or that he suffered any illness/disease as a result of sleeping next to the toilet, etc.  In sum, as drafted, Plaintiff's Complaint

11

expresses that his cell conditions are crowded and uncomfortable, but not that his overall environment falls below the minimum for civilized conditions.   However, the Complaint does not indicate that Plaintiff's overcrowding allegations "are patently meritless and beyond all hope of redemption," O'Dell, 256 Fed. App'x 444, i.e., that Plaintiff, if given an opportunity to supplement his allegations, would be unable to state a claim indicating a violation within the meaning of Hubbard.   Thus, Plaintiff will be granted leave to  amend his claim.

### 2.   Stomach-Virus and Lack-of-Recreation Claims

Plaintiff's stomach-virus and lack-of-recreation claims, as drafted, fare no better.

The denial of exercise or recreation can result in a constitutional violation.  "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)). However, the lack of exercise rises to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." Spain, 600 F.2d at 199.  Thus, lack-of-recreation allegations pass muster under § 1983 only if the plaintiff asserts that the totality of prison conditions so deprived him/her of exercise that the plaintiff

12

suffered a tangible physical harm, and that such prison conditions
resulted from the officials' aim to punish the plaintiff rather
than from legitimate governmental goals, e.g., inmates/personnel's
safety and/or maintenance of the institution.  See Hubbard, 538
F.3d 229; Di Buono, 713 F.2d at 992 (setting forth the two-prong
test of legitimate penological goals and genuine privation).

Here, Plaintiff merely asserts that he was denied "mandatory"
recreation.  The meaning of the word "mandatory," as used by
Plaintiff, is unclear; at best, it suggests Plaintiff's implied
reference to a certain prison regulation or to a published health
recommendation.  However, a violation of such regulations or
standards do not amount to a wrong of constitutional magnitude.
Therefore, Plaintiff's lack-of-recreation claim, as drafted, will
be dismissed.  However, since it is not implausible that Plaintiff
might be able to state a valid lack-of-recreation claim if given an
opportunity to amend his pleading, the Court will dismiss this
claim without prejudice.

Finally, Plaintiff's food-poisoning allegations appear to
raise "failure to protect" considerations.  Under the Eighth
Amendment, prison officials have a duty to "take reasonable
measures to guarantee the safety of the inmates." Farmer v.
Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468
U.S. 517, 526-27 (1984)).  To state an Eighth Amendment
failure-to-protect claim, an inmate must show that he was

13

"incarcerated under conditions posing a substantial risk of serious harm" and that the defendant knew and disregarded that risk.  See Farmer, 511 U.S. at 837; see also Whitley v. Albers, 475 U.S. 312, 319 (1985).

While the Fourteenth Amendment relaxes the standard posed by the Eighth Amendment, the plaintiff still must assert that the government officials were aware of the risk of harm, see Nicini v. Morra, 212 F.3d 798, 807-08 (3d Cir. 2000); see also DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 197 (1989), and disregarded the risk with in their aim to punish the plaintiff. See Bell, 441 U.S. at 535-39.  Here, however, Plaintiff merely asserts the fact that he suffered of stomach virus during two days, June 27 and 28, 2008.  However, the fact that Plaintiff had a stomach virus does not suggest either that Defendants knew of the risk associated with a particular food Plaintiff consumed on or prior to June 27, 2008, or that Defendants ignored that risk.  In sum, these allegations, as drafted, fail to state a claim.  That said, same as with respect to Plaintiff's other allegations, the deficiencies of this claim do not appear incurable by amendment. The Court, therefore, will dismiss Plaintiff's claim based on alleged food poisoning without prejudice.

**C.   Access-to-the-Courts Allegations**

14

Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[4]

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828.  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly

_____

[4]  The right of access to the courts is an aspect of the First Amendment right to petition.  See McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Hudson v. Palmer, 468 U.S. 517, 523 (1984); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974). The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis removed). Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges. See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 U.S. Dist. LEXIS 4022 (E.D. Pa. March 31, 2000).

In addition, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense. See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Here, Plaintiff failed to allege any actual injury as a result of the alleged inadequacy of the law library at his place of confinement. If he was having a legal action other than the instant matter in mind, he did not provide the Court with any information about this action or about the actual injury he

16

allegedly suffered from his inability to obtain legal assistance at
the library.[5]  Plaintiff, therefore, will be allowed an opportunity
to amend his pleading detailing the facts of his access-to-the-
courts claim in the event Plaintiff's claim is based on a legal
action *other* than the instant matter.

In contrast, in the event Plaintiff is alleging
insufficiencies of the law library on the basis of his filings made
in this matter, as his Complaint vaguely suggests, see Docket Entry
No. 1, at 5 (stating, "No trained law library person to help assist
me with my case and filing this form," and seemingly indicating
that he has only one case in mind, i.e., the instant matter, but
leaving the Court to guess if his reference to "my case" and also
to "this form" could be an indication of different claims based on
the instant matter as well as Plaintiff's other legal case),
Plaintiff's allegations clearly fail to state a claim, since
Plaintiff was in no way disadvantaged by inadequacies of law
library: under the liberal construction standard discussed supra,

---

[5]  In Christopher v. Harbury, 536 U.S. 403 (2002), the
Supreme Court set forth specific criteria that a court must
consider in determining whether a plaintiff has alleged a viable
claim of right to access to the courts.  The Court explained that
the first requirement mandated that the plaintiff specifically
state in the complaint the underlying claim in accordance with
the requirements of Rule 8(a) of the Federal Rules of Civil
Procedure to the same degree as if the underlying claim was being
pursued independently.  See Christopher, 536 U.S. at 417.  In
this regard, the statement must be sufficiently specific to
ensure that the district court can ascertain that the claim is
not frivolous and that the "the 'arguable' nature of the
underlying claim is more than hope."  Id.

Plaintiff is not bound by any technicalities or need not discuss any law. <u>See</u> <u>Haines</u>, 404 U.S. 519; <u>Day</u>, 969 F.2d at 42.  All Plaintiff has to assert is sufficient facts of his claims, <u>See</u> <u>Phillips</u>, 515 F.3d at 230-34, which the Court would "accept as true" and make all "reasonable inferences that can be drawn therefrom."  <u>Morse</u>, 132 F.3d at 906.  It is self-evident that a library assistant has no command of Plaintiff's facts; the sole person aware of the facts of his claims is Plaintiff himself, and the Court allows Plaintiff an ample opportunity to amend his deficient pleading by elaborating on all his above-discussed claims.

## IV.  <u>CONCLUSION</u>

In view of the foregoing, the Court will grant Plaintiff <u>in forma pauperis</u> status.  The Court will dismiss Plaintiff's Complaint without prejudice and allow Plaintiff to amend his pleading by: (1) detailing the facts of his claims against the named Defendants (or naming alternative defendants); and (2) elaborating on the facts of his overcrowding, lack-of-recreation, failure-to-protect claims and access-to-the-courts claims.

An appropriate order accompanies this Opinion.

**s/ Jerome B. Simandle**
**Jerome B. Simandle**
**United States District Judge**

Dated:   **November 3, 2008**

18